IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KEN GOLDSMITH, | ) | Bankrupty No. 19-24475-JAD |
| | ) | |
| Debtor. | ) | Chapter 13 |
| | X | |
| | ) | Related to ECF #36 |
| KEN GOLDSMITH, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| - v - | ) | |
| | ) | |
| PITTSBURGH MERCY HEALTH SYSTEM, INC., | ) | |
| | ) | |
| Respondent. | ) | |
| | X | |

## MEMORANDUM OPINION

The matter before the Court is a motion filed by Ken Goldsmith, *pro se*. The Motion is titled as: *Emergency Motion for Reconsideration of the Dismissal Order, to Reinstate Case, and to Prevent Irreparable Harm, Spoliation, and Personal Endangerment* (the "Motion"). This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), 157(b)(2)(A), and 157(b)(2)(O).

The Motion seeks the *vacatur* of this Court's Order dated December 30, 2019 (the "Dismissal Order") that dismissed the instant bankruptcy case for failure to file documents mandated by the United States Bankruptcy Code and related Bankruptcy Rules. See 11 U.S.C. §§ 521 and 1321; Fed.R.Bankr.P. 1007; and Local Bankruptcy Rule 1017-2.

The documents Mr. Goldsmith did not file include schedules of assets and

liabilities, statement of financial affairs, and a Chapter 13 repayment plan.

The net effect of his failure to file such documents is that the case cannot move forward. For example, no meeting of creditors will occur pursuant to 11 U.S.C. § 341 without the filing of the documents. Mr. Goldsmith's failure to file required documents and disclosures precludes the Chapter 13 Trustee and creditors from having the ability to examine the debtor under oath, including ascertaining whether the debtor is eligible for bankruptcy in the first instance. See 11 U.S.C. § 109(e)(setting forth eligibility of a debtor to be a debtor in Chapter 13).

Also, inasmuch as no Chapter 13 plan was filed, no payments have been tendered by Mr. Goldsmith to the Chapter 13 Trustee, and no distributions have been made to creditors. In essence, to date this case has been prosecuted without compliance of a debtor's duties in bankruptcy.

The Court has liberally construed the Motion, and conducted a hearing on the same on January 15, 2020. During the hearing, Mr. Goldsmith was afforded an extensive amount of time to make his arguments to the Court.

As the Court understands the Motion, Mr. Goldsmith primarily seeks *vacatur* of the Dismissal Order in order to invoke the automatic stay against Pittsburgh Mercy Health System, Inc. ("PMHS").

By way of background, when the instant bankruptcy case was commenced, the Debtor occupied a residential unit at one of PMHS's facilities. Due to deplorable conditions in the unit, which clearly caused a health hazard to Mr.

Goldsmith and other occupants at the facility, prior to the bankruptcy filing PMHS both commenced eviction proceedings against Mr. Goldsmith and obtained final judgments in the state court system with respect to the same.

The state court proceedings between Mr. Goldsmith and PMHS were quite contested. But at every level of litigation, PMHS's legal position was sustained by the various state courts and the defenses of Mr. Goldsmith were not successful. Indeed, his efforts to obtain various stays of the eviction were denied.[1]

On November 18, 2019, just hours before the eviction was to take place, Mr. Goldsmith filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code. Shortly after the filing of the instant case, PMHS filed an *Expedited Motion for Relief From Stay or for Determination that the Stay Does Not Apply* (the "Motion for Relief From Stay"). See ECF #8. The Court held an evidentiary hearing on November 26, 2019 on the Motion for Relief From Stay, and took the matter under advisement.

Parenthetically, the instant bankruptcy case is not the first bankruptcy case filed by Mr. Goldsmith in this District. Nor is it the first case which involved complaints regarding the manner in which Mr. Goldsmith caused his residence to be inhabitable and a public nuisance to others.

---

[1] The Court takes judicial notice of the record made at the November 26, 2019 hearing before this Court, including all testimony and exhibits relating to the state court proceedings. The Court also takes judicial notice of (1) the various state court orders attached as exhibits to PMHS's pleadings filed at ECF #8, (2) the record made in Mr. Goldsmith's first bankruptcy case filed at 10-28369-JAD, and (3) the record made in Mr. Goldsmith's second bankruptcy case filed at 12-21157-JAD.

The Court's docket reflects that on November 26, 2010, Mr. Goldsmith filed a Chapter 13 case at Bankruptcy No. 10-28369-JAD. The pleadings in that case reflect that the case was precipitated by a dispute between Mr. Goldsmith and his prior landlord, whereby the landlord contended that Mr. Goldsmith was a nuisance to certain property and that he caused various hazzards with respect to the same. See Bankruptcy No. 10-28369-JAD at ECF #8 and the exhibits attached thereto. Mr. Goldsmith's first bankruptcy case was ultimately dismissed by way of stipulation of Mr. Goldsmith.[2]

The Court's docket also reflects that on March 7, 2012, Mr. Goldsmith filed another Chapter 13 bankruptcy case at Bankruptcy No. 12-21157-JAD. This second bankruptcy case was a "bare bones" filing, in which Mr. Goldsmith failed to file documents required by the Bankruptcy Code and Bankruptcy Rules.

Like the prior bankruptcy case, this second bankruptcy case was precipitated by litigation between Mr. Goldsmith and another prior landlord involving the inhabitable manner in which Mr. Goldsmith maintained his residential premises. See Bankruptcy No. 21157-JAD at ECF ##'s 23, 37 and exhibits attached thereto, 67, 95, 120, and 121.

After much litigation, and various continuances granted to Mr. Goldsmith, his second bankruptcy case was dismissed because Mr. Goldsmith was ineligible

---

[2] Mr. Goldsmith sought reconsideration of the dismissal of the case, but such request was denied. The denial of the reconsideration was affirmed on appeal.

to be a Chapter 13 debtor due to lack of "regular income" as required by 11 U.S.C. § 109(e). See Bankruptcy No. 21157-JAD at ECF ##'s 121,139, 182, and 199.

At the time of dismissal of his second case, Mr. Goldsmith had not completed the filing of documents necessary for the case to remain in Chapter 13, but the Court did not need to address this failure since it dismissed the bankruptcy case for other reasons.

In any event, by the time Mr. Goldsmith filed the case *sub judice,* he was well aware of the requirement to file documents and that eligibility to be a debtor in Chapter 13 is dependent upon, among other things, that the putative debtor have "regular income."

The record in the present case reflects that Mr. Goldsmith has never filed the documents required by the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules. He never filed the documents even though he had asked for additional time to file them, and the Court granted the request.[3] See ECF #28. As a result, the Dismissal Order was entered, see ECF #32, and Mr. Goldsmith filed his Motion at or near the time PMHS was evicting Mr. Goldsmith from the premises.

As set forth above, Mr. Goldsmith seeks reconsideration of the Dismissal

---

[3] The documents were due to be filed on December 2, 2019, and by Order of the Court this deadline was extended at the request of Mr. Goldsmith to December 23, 2019. See ECF # 5 and ECF #25. No further request was made by Mr. Goldsmith to extend the additional time to file the requisite documents.

Order because he would like the automatic stay to be reinstated against PMHS. He would also like the Court to unwind any eviction that occurred while the case was dismissed.

The Court would note that nowhere in the Motion or in arguments made at the January 15, 2020 hearing did Mr. Goldsmith argue that the Dismissal Order was erroneous in any fashion. In deciding the Motion, the Court nonetheless has examined the record and re-verified that the entry of the Dismissal Order was consistent with the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules. See 11 U.S.C. §§ 521 and 1321; Fed.R.Bankr.P. 1007; and Local Bankruptcy Rule 1017-2.

The record further reflects that Mr. Goldsmith was put on notice that his failure to file documents would result in the dismissal of his bankruptcy case. In fact, the *Notice of Filing Deficiencies* issued to Mr. Goldsmith states unequivocally that as a result of his failure to file documents:

> . . . the United States Trustee is deemed to have filed a Motion to Dismiss the bankruptcy case based upon the deficiencies in the documents required to be filed by the debtor pursuant to the Bankruptcy Code, Bankruptcy Rules, or Local Bankruptcy Rules. This motion will be granted and the case dismissed if the specified deficiencies on the attached are not corrected within 14 days, or within such further time as the court may allow by order.

See ECF #5.

Accordingly, the entry of the Dismissal Order was warranted.[4] It was also appropriate for the Court to enter the Dismissal Order pursuant to 11 U.S.C. § 1307(c), which authorizes the Court to dismiss a Chapter 13 case when there is "unreasonable delay by the debtor that is prejudicial to creditors," or for "failure to file a plan timely," or for "failure to commence making timely payments." Each of these elements of 11 U.S.C. § 1307(c) are present.

Moreover, at the January 15, 2020 hearing on the Motion, Mr. Goldsmith acknowledged that, like his prior case, he has no income to fund a Chapter 13 plan. It therefore appears that Mr. Goldsmith is ineligible to be a Chapter 13 debtor pursuant to 11 U.S.C. § 109(e)– which states that only "an individual with regular income" may be a Chapter 13 debtor. Accordingly, at all times pertinent hereto, Mr. Goldsmith's Chapter 13 case was ripe for dismissal based upon lack of eligibility. In re Tomco, 339 B.R. 145 (Bankr. W.D. Pa. 2008)(bankruptcy case dismissed due to lack of debtor eligibility).

But again, the primary reason why Mr. Goldsmith would like the Dismissal Order vacated is that Mr. Goldsmith would like the automatic stay to be reinstated *nunc pro tunc* in order unwind any eviction by PMHS. Applicable case law, however, recognizes that reinstatement of a dismissed case does not "retroactively

---

[4] The Court observes that the extended deadline for Mr. Goldsmith to complete his filings was December 23, 2019, and the Dismissal Order was entered on December 30, 2019. It therefore appears that not only did Mr. Goldsmith fail to timely complete his filings by the extended deadline granted by the Court, he also failed to avail himself of the opportunity to file his papers during the additional week period between December 23, 2019 through December 30, 2019.

reinstate the automatic stay during the period of time the case was dismissed with respect to creditor conduct that occurred between the dismissal and reinstatement." Gargani v. Wells Fargo Bank (In re Gargani), 398 B.R. 839, 840 (Bankr. W.D. Pa. 2009)(citing Shaw v. Ehrlich, 294 B.R. 260, 274 (W.D. Va. 2003)).

Even if the Court had the discretion to consider a request to reinstate the stay *nunc pro tunc,* it is subject to debate whether the Court should do so. The Court reaches this conclusion because it is far from certain that the automatic stay provides Mr. Goldsmith protection from PMHS's efforts to enforce its judgment for possession.

It is true that Section 362(a) of the Bankruptcy Code generally provides that "[e]xcept as provided in subsection (b) of this section, a petition filed under . . . this title . . . .operates as a stay[.]"  11 U.S.C. § 362(a).

The breadth and scope of Section 362(a), however, is not unlimited. For instance, Section 362(b) of the Bankruptcy Code sets forth exceptions to the applicability of the automatic stay and, in particular, states that:

> The filing of a petition . . . does not operate as a stay . . . of the continuation of any eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease or rental agreement and with respect to which the lessor has obtained before the date of the filing of the petition, a judgment for possession of such property against the debtor.

See 11 U.S.C. § 362(b)(22).

The exception found in Section 362(b)(22) also has an exception, which is commonly known as a "safe harbor."

That is, the exception to the automatic stay found in Section 362(b)(22) is subject to the provisions of 11 U.S.C. § 362(l), which operate as a safe harbor precluding the termination of the stay in instances where (1) the judgment for possession was obtained as a result of a "monetary default" of the debtor, (2) the debtor is able to cure the entire "monetary default" under applicable non-bankruptcy law, (3) the debtor has, within thirty (30) days of the petition date, filed and served a certification setting forth the debtor's cure rights, and (4) the debtor has, within thirty (30) days of the petition date, deposited with the clerk the rent due for the thirty (30) days after the petition is filed.  11 U.S.C. § 362(l).

In examining this safe harbor provision, courts have held that the exception to the automatic stay under Section 362(b)(22) is not applicable where the judgment for possession is based upon non-monetary defaults.  See In re Alberts, 381 B.R. 171, 177, n.5 (Bankr.W.D. Pa. 2008)(observing that Section 362(l)'s safe harbor provision does not apply where the "judgment [of possession] arose from the Debtor's continued occupancy of the Premises as a holdover tenant[.]"); In re Soto, 500 B.R. 679, 282 (Bankr. S.D.N.Y 2013) (Section 362(l) safe harbor is inapplicable if prepetition judgment for possession was based on a debtor's non-monetary default); In re Paul, 473 B.R. 474, 475-77 (Bankr. S.D.Ga. 2012) (holding that the safe harbor from eviction exception to the automatic stay

is unavailable to a debtor where the reason for landlord's prepetition judgment of possession is a non-monetary default); In re Harris, 424 B.R. 44, (Bankr. E.D.N.Y. 2010); In re Griggsby, 404 B.R. 83, 92-93 (holding that Chapter 13 debtor could not seek reinstatement of automatic stay under stay statute's safe harbor provision where prepetition state-court order authorizing landlord to execute warrant of eviction was based solely upon debtor's failure to cure excessive accumulation of debris and clutter in apartment creating health and fire risk, since the default was non-monetary in nature); In re Kelly, 2014 WL 5800984 (Bankr. N.D. Oh. 2014); and In re Harris, 2011 WL 2038757 at *2, 2011 Bankr.LEXIS 1932 at *6 (Bankr. D.S.C. May 24, 2011)(holding that "[w]here the default that gave rise to the eviction is not a monetary default, the exception of § 362(b)(22) to the imposition of the stay is immediate and § 362(l) does not provide even a short term 30 day stay.").

The Court notes that this analysis does not include a holistic review of all of the other provisions of the Bankruptcy Code because none of the parties have undertaken a holistic analysis. Regardless, the Court declines to opine on this matter, except to observe that Griggsby, supra. appears to be on point considering only the text of 11 U.S.C. §§ 362(b)(22) and 362(l). The Court also declines to opine on these matters because the holding in Gargani, supra., reflects that the terminated stay cannot, as a matter of law, be retroactively resurrected.

Ultimately, in this case it was incumbent upon Mr. Goldsmith to file the

requisite documents and follow the rules. See e.g. Ogden v. San Juan County, 32 F.3d 452, 455 (10th Cir. 1994)("*pro se* status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure"); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987)(*pro se* litigants must follow same rules of procedure that other litigants follow). When he did not, his case (upon notice) was dismissed. For these reasons, the Court sees no reason to disturb the Dismissal Order.

For purposes of completeness, the Court has also considered Mr. Goldsmith's suggestion that the Court vacate the dismissal order and permit Mr. Goldsmith to convert his case to a Chapter 7 liquidation.[5] The Court, however, is not inclined to do so inasmuch as Mr. Goldsmith has not filed any of the documents necessary to complete his filings and he has not identified anytime soon in which he has the capability to do so. Absent the filing of such documents, any *vacatur* of the Dismissal Order coupled with a conversion of this case to a Chapter 7 is at best an academic exercise and at worst an exercise of futility

---

[5] The Court is sympathetic to any disability Mr. Goldsmith may have and has considered Mr. Goldsmith's complaints that PMHS is discriminating against him on account of a disability. The Court opines neither positively or negatively as to these complaints, except to note that any complaint based upon 11 U.S.C. § 525 has not been established. The Court reaches this conclusion because the record establishes that PMHS sought to evict Mr. Goldsmith based upon the pre-petition judgment for possession (which itself was based upon the deplorable condition in which Mr. Goldsmith maintained the premises at issue). Nothing exists in the record which would support any claim that the eviction efforts by PMHS are based upon Mr. Goldsmith's bankruptcy filing or his effort to discharge a debt in bankruptcy. Under these circumstances, 11 U.S.C. § 525 is inapplicable.

because the case would be ripe for another dismissal. These circumstances therefore warrant the denial of the Motion.

In rendering this decision, the Court notes that the Dismissal Order is without prejudice to the ability of Mr. Goldsmith to file another bankruptcy under Chapter 7 at a later date. In such a future filing, if any, Mr. Goldsmith will be expected to comply with all applicable requirements set forth in the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules.

January 17, 2019

_____
The Honorable Jeffery A. Deller
United States Bankruptcy Judge

FILED
1/17/20 4:03 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA